IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **U.S. Equal Employment Opportunity Commission,**<br>George H. Fallon Federal Building<br>31 Hopkins Plaza, Suite 1432<br>Baltimore, MD 21201<br><br>**Plaintiff,**<br><br>v.<br><br>**Schneider National, Inc.**<br>3101 Packerland Drive,<br>Green Bay, WI 54313<br><br><br><br><br>**Defendant.** | **Civil Action No.**<br><br><br><br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act ("the ADA") of 1990, as amended through the ADA Amendments Act of 2008 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to Melissa Dafnis ("Dafnis"), who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("the EEOC" or "the "Commission") alleges that Defendant Schneider National, Inc. ("Defendant") unlawfully discriminated against Dafnis by denying her accommodation request and withdrawing her conditional job offer because of her disability and/or need for accommodation.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3.      Plaintiff EEOC is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      Defendant is a corporation headquartered in Wisconsin with operations throughout North America.

5.      At all relevant times, Defendant has continuously been doing business in the State of Maryland and has continuously had at least fifteen (15) employees.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g), (h).

7. At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Dafnis filed a charge with the Commission's Baltimore Field Office alleging violations of the ADA by Defendant.

9. On or around June 4, 2025, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that it had violated the ADA and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission provided Defendant with proposed terms for conciliation and engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On or around July 28, 2025, the Commission issued to Defendant a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

14. Defendant engaged in unlawful employment practices in violation of Sections 102(a), 102(b)(5)(A), and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C. §§ 12112(a), 12112(b)(5)(A), (B), by refusing to reasonably accommodate Dafnis, and by withdrawing the

conditional job offer previously extended to Dafnis for the position of Dedicated Truck Driver – Target on account of Dafnis' disability and/or the need to reasonably accommodate her.

    a.    At all relevant times, Dafnis was a qualified individual with a disability as defined by the ADA.

    b.    At all relevant times, Dafnis had been diagnosed with post-traumatic stress disorder ("PTSD").

    c.    Dafnis' PTSD is a mental impairment that substantially limits her major life activities, including social interaction, and/or the operation of major bodily functions, including but not limited to, brain function and neurological function.

    d.    As described below, Defendant had a record of Dafnis' disability.

    e.    On or around September 21, 2023, Dafnis applied for a Dedicated Truck Driver – Target position with Defendant.

    f.    The Dedicated Truck Driver – Target job announcement included two qualifications: that the applicant have a valid Class A Commercial Driver's License ("CDL"); and live within 50 miles of one of four designated work locations, including Baltimore, Maryland.

    g.    Dafnis had her Class A Commercial Driver's License ("CDL") and lived near Grasonville, Maryland, within 50 miles of Baltimore, Maryland.

    h.    As a Dedicated Truck Driver – Target, Dafnis was to drive a commercial tractor trailer and haul freight to various in-state and out-of-state locations, including in Maryland.

    i.    At the time of her application, Dafnis had nine years' experience pulling a 44-foot fifth wheel recreational vehicle ("RV").

j. Dafnis provided Defendant with her Department of Transportation Medical Examination Report Form ("DOT Medical Exam Report Form"), which details Dafnis' medical history, lists the results of a physical exam performed by a Federal Medical Examiner, and includes the Medical Examiner's determination that Dafnis was physically qualified to drive a commercial motor vehicle in accordance with the standards outlined in 49 CFR § 391.41.

k. Dafnis' DOT Medical Exam Report Form reflected her PTSD diagnosis and her use of a service dog to accompany her in her truck.

l. In confirming Dafnis was physically qualified to drive a commercial motor vehicle in accordance with the standards outlined in 49 CFR § 391.41, the Medical Examiner concluded Dafnis had "no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely."  49 CFR § 391.41(b)(9).

m. On September 21, 2023, Defendant called Dafnis in response to her job application and informed her she was a good fit for the position.

n. Defendant scheduled Dafnis to attend new-employee orientation on October 2, 2023.

o. Defendant advised Dafnis that because of her need for a service dog, as noted on the DOT Medical Exam Report Form, there would be a process for her to go through to receive a reasonable accommodation.

p. On September 21, 2023, Defendant extended Dafnis a conditional job offer for the position of Dedicated Truck Driver – Target.

q. Dafnis accepted Defendant's job offer and planned to attend new-employee orientation on October 2, 2023.

r. On September 22, 2023, Defendant withdrew Dafnis' conditional offer and removed her from this position.

s. Vault Health ("Vault") is Defendant's agent which, among other things, conducts medical and accommodation reviews on Defendant's behalf.

t. On September 22, 2023, Vault sought information from Dafnis regarding her request to have her service dog accompany her in the truck.

u. Dafnis advised Vault of the following:

    i. Dafnis was diagnosed with PTSD in March 2019.

    ii. Dafnis is under regular care with a physician and a mental health provider to treat her PTSD.

    iii. Dafnis' physician and mental health providers have implemented a detailed treatment plan for Dafnis' PTSD and to control Dafnis' PTSD symptoms.

    iv. Dafnis' treatment plan includes therapy, medication, and a service dog—a six-pound female chihuahua—who is trained to alleviate and prevent episodes of heightened anxiety.

    v. Dafnis has used her service dog for three years.

    vi. Dafnis utilized her service dog when completing her multi-week CDL training course and when taking her Class A CDL driving test.

    vii.  Dafnis could perform all duties related to being a trucker and driving (including backing, hitching, and pre-trip), and had nine years' experience living in and pulling a 44-foot 5th wheel RV.

    viii.  Dafnis' service dog was well-trained, registered as a Service Dog with the U.S. Service Animal Registry, and would be confined to a carrier on the floor of the vehicle.

    ix.  Dafnis' service dog is trained to alert her to her own heightening levels of anxiety.

    x.  Dafnis offered to be observed driving with her service dog during orientation.

  v.  Dafnis provided Vault with letters from two medical practitioners requesting that Dafnis be permitted to have her service dog with her as a reasonable accommodation.

  w.  Dafnis provided Vault with her Department of Transportation Medical Examiner's Certificate ("DOT Medical Certificate"). The DOT Medical Certificate was issued to Dafnis in conjunction with her DOT Medical Exam Report Form. The DOT Medical Certificate includes a Federal Medical Examiner's certification that, notwithstanding her medical conditions, Dafnis was physically qualified to operate a commercial vehicle in accordance with 49 CFR 391.41.

  x.  On September 28, 2023, Defendant's Medical Compliance Manager contacted Dafnis to request the same information she already supplied to Vault.

   y. On October 2, 2023, Dafnis provided Defendant with the information and documents she previously supplied to Vault.  She also reiterated her willingness to have Defendant observe her drive with her service dog during orientation.

   z. Hearing nothing after October 2, 2023, Dafnis left two voicemails with the Medical Compliance Manager, which went unanswered, and then overnighted a letter to the Medical Compliance Manager seeking confirmation that her earlier submission was received.

   aa. On October 9, 2023, the Medical Compliance Manager responded to Dafnis with two follow-up questions about her service dog, which Dafnis answered in full.

   bb. By letter dated October 16, 2023, Defendant denied Dafnis' accommodation request and deemed her ineligible for the Dedicated Truck Driver – Target position.

   cc. Defendant's stated reason for denying Dafnis' accommodation request was its assertion that Dafnis' service dog would create a "noise distraction."

15. After Defendant rejected Dafnis, each of the trucking companies that Dafnis has worked for has allowed her to be accompanied by her service dog.  She has performed her job duties safely and effectively with this accommodation.

16. The effect of the practices complained of above in Paragraph 14 has been to deprive Dafnis, who was at all times a qualified individual with a disability, of equal employment opportunities and otherwise adversely affect her rights under the ADA.

17. The unlawful employment practices complained of above were intentional.

18. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Dafnis.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with them, from engaging in any employment practice that discriminates based on disability;

B.    Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and eradicate the effects of its past and present unlawful employment practices, and prevent disability discrimination from occurring in the future;

C.    Order Defendant to make whole Dafnis by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement; and consequential damages;

D.    Order Defendant to make Dafnis whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 14 above, in an amount to be proven at trial;

E.    Order Defendant to make Dafnis whole by providing compensation for past and future non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, frustration, and humiliation, in an amount to be proven at trial;

F.    Order Defendant to pay Dafnis punitive damages for its callous indifference to her federally protected right to be free from discrimination based on disability;

G. Order Defendant to sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and inform all employees that it will not discriminate against any employee because of a disability, including that it will comply with all aspects of the ADA;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I. Award the Commission its costs in this action.

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CATHERINE ESBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

/s/ *Debra M. Lawrence*
DEBRA M. LAWRENCE
Regional Attorney

/s/ *Thomas D. Rethage*
THOMAS D. RETHAGE
Senior Trial Attorney

SARIN V. KEOSIAN-FROUNJIAN
Trial Attorney
U.S. Equal Employment Opportunity
Commission | Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
Phone: (267) 589-9802
CA Bar No. 331580
PA Bar No. 329591